# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
           *Plaintiff-Appellee,*

v.

FRANCISCO ALVAREZ-PEREZ,
           *Defendant-Appellant.*

No. 09-50334

D.C. No.
3:07-CR-01661-H-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Marilyn L. Huff, District Judge, Presiding

Argued and Submitted
August 4, 2010—Pasadena, California

Filed December 22, 2010

Before: Alex Kozinski, Chief Judge, Kim McLane Wardlaw,
Circuit Judge, and James K. Singleton,
Senior District Judge.*

Opinion by Judge Singleton

---

*The Honorable James K. Singleton, Senior District Judge for the District of Alaska, sitting by designation.

20571

## COUNSEL

Bridget L. Kennedy (argued), Federal Defenders of San Diego, Inc., San Diego, California, for the defendant-appellant.

Karen P. Hewitt, United States Attorney, Bruce R. Castetter, Assistant United States Attorney, Chief, Appellate Section, Criminal Division, and Victor P. White (argued), Assistant United States Attorney, San Diego, California, for the plaintiff-appellee.

## OPINION

SINGLETON, Senior District Judge:

Francisco Alvarez-Perez ("Alvarez") appeals his conviction of being a deported alien found in the United States in violation of 8 U.S.C. § 1326. Alvarez contends that his prosecution violated the Speedy Trial Act ("STA") because the permitted 70-day period was exceeded.

*FACTS*

The material facts are largely undisputed. Alvarez was arrested on May 12, 2007. On May 15, 2007, he was charged in a complaint with a violation of 8 U.S.C. § 1326. The parties immediately began to discuss a disposition, apparently intending to proceed under the district's fast-track procedure. Alvarez waived his right to indictment, the government filed an information, and Alvarez entered a plea of not guilty. Alvarez

filed a written notification of his intent to plead guilty, and the court scheduled a change of plea hearing. Sometime between June 12 and June 27 Alvarez decided not to change his plea to guilty. In response, on June 27, 2007, the government filed an indictment obtained from the Grand Jury charging Alvarez with violations of 8 U.S.C. § 1326, in a separate proceeding with a separate case number. The change of plea hearing was vacated on July 6, 2007, and the information in the previous case remained pending. Alvarez was arraigned on the indictment on July 18, 2007, and at that time, the information was dismissed without prejudice at the government's request.

On August 14, 2007, Alvarez gave a second notice of intent to change his plea, and a hearing was scheduled for the following day, August 15, 2007. At the hearing Alvarez again changed his mind and informed the court that he did not want to plead guilty. A status conference was set for August 24, 2007, to determine whether Alvarez wished to file motions. At that hearing the district court, relying on the July 18, 2007, arraignment to trigger the STA clock, specified September 26, 2007, (70 days after July 18) as the last day for trial under the STA. Alvarez did not object to this date. On September 10, 2007, Alvarez began to file his pretrial motions. The parties agree that all time between September 10, 2007, and when Alvarez was tried on January 20, 2009, was properly excluded. 18 U.S.C. § 3161.

## STANDARD OF REVIEW

We review the district court's disposition of an STA issue for clear error as to factual findings and de novo as to application of legal standards. *United States v. Henderson*, 746 F.2d 619, 622 (9th Cir. 1984), *aff'd*, 476 U.S. 321 (1986).

## DISCUSSION

The government argues that the STA clock began to run on July 18, 2007, when Alvarez was arraigned on the indictment.

If so, 51 non-excludable days accrued on September 10, 2007, and trial was timely. In contrast, Alvarez argues that the STA clock began to run on June 27, 2007. By this calculation— after automatically excluding the date of the indictment, arraignment, and the two days devoted to Alvarez's second notice of his intent to plead guilty[1]—a period of 72 non-excludable days accrued on September 10, 2007, and the STA was violated.

[1] The Speedy Trial Act, 18 U.S.C. § 3161(c)(1), provides, in relevant part:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

[2] In this case, Alvarez made his first appearance on the 8 U.S.C. § 1326 complaint on May 15, 2007, and the information was filed on June 12, 2007. Under the plain language of the STA, June 12, 2007, is the trigger date. *See Haiges*, 688 F.2d at 1274. The government contends, however, that the indictment, not the information, is the relevant charging document. It further argues that the indictment did not become the "pending" charge for STA purposes until July 18, when the

---

[1]Although these automatically excludable days between June 27 and September 10 were overlooked by the parties and do not affect the outcome, we recognize them in our computation for completeness and accuracy. *See*, *e.g.*, *United States v. Wirsing*, 867 F.2d 1227, 1230 (9th Cir. 1989) (date indictment returned automatically excluded); *United States v. Haiges*, 688 F.2d 1273, 1275 (9th Cir. 1982) (date of arraignment automatically excluded); *see also United States v. Jenkins*, 92 F.3d 430, 440 (6th Cir. 1996) (time devoted to change of plea notice automatically excluded).

information, which had been the relevant charging document up to that point, was dismissed. *See* 18 U.S.C. § 3161(c)(1).

**[3]** But here there is only one charge: Alvarez was charged in a complaint with a violation of § 1326, he waived his right to an indictment and pleaded not guilty to an information charging the same violation of § 1326. When Alvarez declined to change his plea to guilty, the government obtained an indictment charging him with the same violation of § 1326. The government does not contend that Alvarez made multiple illegal entries into this country that were separately charged, nor did it add new claims or join new defendants.

**[4]** Nor do we see any reason to assign any significance to the fact that the earlier information and the subsequent indictment were assigned different case numbers. To credit the government's argument would be to elevate form over substance and violate the clear intent of Congress. Were we to uphold the government's theory, the government in every case could extend the STA's time limits by indicting, dismissing, and re-indicting under new case numbers. Thus, June 12, 2007, the date the information was filed, is the trigger date for the STA.

**[5]** The formal dismissal of the information and subsequent filing of an indictment on the same charge do not suggest otherwise. The STA treats informations and indictments as equivalents. See, *e.g.*, 18 U.S.C. § 3161(b) ("information or indictment"); *id.* § 3161(c)(1) (same); *id.* § 3161(d)(1) ("indictment or information"). Thus, the subsequent indictment was akin to a superseding indictment or a re-indictment, depending on whether the indictment was filed before or after the information was dismissed. This distinction is meaningless here, however, because either a re-indictment or superseding indictment would inherit the previous STA clock. *See United States v. Duque*, 62 F.3d 1146, 1150 (9th Cir. 1995) (re-indictment after government dismisses initial indictment does not restart STA clock); *United States v. Karsseboom*, 881 F.2d 604, 606 (9th Cir. 1989) (superseding indictment

charging same offenses does not restart STA clock). Accordingly, the filing of the indictment on the same charge did not start a new clock for the purposes of the STA.

**[6]** For practical purposes, however, we can consider June 27, 2007, to be the trigger date, as Alvarez concedes that any time devoted to the fast-track proceedings before June 27 is properly excluded. Although, in general, time devoted to plea negotiations is not automatically excluded, *see United States v. Ramirez-Cortez*, 213 F.3d 1149, 1155 (9th Cir. 2000); other circuits have found the situation to be different where the defendant notifies the court that negotiations have resulted in an agreement and, as a result, the court sets a change of plea hearing. *See United States v. Rector*, 598 F.3d 468, 472 (8th Cir. 2010); *see also United States v. Santiago-Becerril*, 130 F.3d 11, 19-20 (1st Cir. 1997), *abrogated on other grounds by United States v. Barnes*, 251 F.3d 251 (1st Cir. 2001); *Jenkins*, 92 F.3d at 440. In that situation, the time until the hearing is held to be excluded either under § 3161(h)(1)(G) because it is "delay resulting from consideration by the court of a proposed plea agreement" or under 18 U.S.C. § 3161(h)(1)(D) as a "pretrial motion." We therefore treat June 27 as the effective start date. *See United States v. Medina*, 524 F.3d 974, 978-79 (9th Cir. 2008) (discussing exclusion of time where a pretrial motion requires a hearing).

**[7]** The government reasons, in the alternative, that even if June 27 triggered the STA clock, all of the time devoted to the information before its dismissal on July 18 constituted "other proceedings concerning the defendant" and was properly excluded for purposes of the STA. *See* 18 U.S.C. 3161(h)(1). The government relies on *United States v. Arellano-Rivera*, 244 F.3d 1119 (9th Cir. 2001), and *United States v. Lopez-Osuna*, 242 F.3d 1191 (9th Cir. 2001), arguing that these cases are factually indistinguishable from the instant case. In both cases, the defendant initially was charged in a complaint with a violation of 8 U.S.C. § 1326. Within the 30 days allowed for the filing of an indictment, each of the defendants

waived indictment and agreed to proceed by information, and, in exchange, prosecutors agreed to pursue less serious charges under 8 U.S.C. § 1325. The defendants indicated they would plead not guilty while the parties completed plea negotiations under a fast-track procedure. Each defendant subsequently changed his mind and declined to plead guilty. In each case, the government then substituted an indictment charging the defendants with violations of 8 U.S.C. § 1326. However, in each case the government did not obtain the § 1326 indictment within the 30-day time period allotted by the STA. 18 U.S.C. § 3161(b). Nevertheless, we determined that a significant portion of the intervening time was excludable as delay resulting from "other proceedings" concerning the defendant under 18 U.S.C. § 3161(h)(1). *See Arellano-Rivera*, 244 F.3d at 1124; *Lopez-Osuna*, 242 F.3d at 1198. In light of the different sets of charges under different sections, all time was excludable after the defendants waived indictment so long as the information was pending. The government urges us to adopt this same reasoning in the present case.

We decline to do so. In *Arellano-Rivera* and *Lopez-Osuna*, the defendants were initially charged by information with a violation of 8 U.S.C. § 1325, a different charge than 8 U.S.C. § 1326, although the two sections are related. In each case, once the defendant informed the court he did not want to plead guilty to the information, the government abandoned the 8 U.S.C. § 1325 charge alleged in the information (although the government did not dismiss the information) and obtained an indictment, alleging a violation of 8 U.S.C. § 1326. That the original information and subsequent indictment charged the defendants with violations of different sections became the basis for treating them as different proceedings under 18 U.S.C. § 3161(h)(1). *See Arellano-Rivera*, 244 F.3d at 1124 ("As explained above, the prosecutor's filing of a criminal information on *wholly separate charges, together with the defendant's willingness to proceed with the case initiated by the information*, trigger the 'other proceedings' exception of the STA." (emphasis added));

*Lopez-Osuna*, 242 F.3d at 1198 ("Though similar, sections 1325 and 1326 are separate offenses, with some separate elements.").

Similarly, the government contends that this case is analogous to *United States v. Solorzano-Rivera*, 368 F.3d 1073 (9th Cir. 2004). In *Solorzano-Rivera* the defendant was arrested and charged with illegal entry under 8 U.S.C. § 1326. Apparently in contemplation of a plea agreement, the government filed an information charging him with illegal reentry. Solorzano waived indictment and pleaded guilty that same day. Two months later, Solorzano moved to withdraw his guilty plea. The court granted the motion, and shortly thereafter the government sought and obtained an indictment alleging a violation of 8 U.S.C. § 1326. Solorzano moved to dismiss the indictment, claiming that it was untimely because it had not been filed within the time required by 18 U.S.C. § 3161(b). We held that the period of time from Solorzano's entry of his guilty plea until the district court accepted his withdrawal of that plea was properly excluded from the statutory period to indict under 18 U.S.C. § 3161(h)(1)(I) as a "delay resulting from consideration by the court of a proposed plea agreement." *See Solorzano-Rivera*, 368 F.3d at 1077.[2] In this case, the government argues that we should similarly exclude the time devoted to the information.

*Solorzano-Rivera* is also distinguishable from this case. In *Solorzano-Rivera* the defendant pleaded guilty to the information and subsequently withdrew his plea once the 30-day time period for the government to indict him had passed. The *Solorzano-Rivera* court was concerned that the STA would not be served by allowing a defendant to waive his right to indictment, plead guilty to an information, and then withdraw his plea and complain that the government failed to obtain an indictment within the appropriate time frame. *Id.* at 1078. This concern is not implicated in this case because, although

---

[2]This subsection currently appears at 18 U.S.C. § 3161(h)(1)(G).

Alvarez led the government and the court to believe that he would plead guilty to the information, he never actually entered a guilty plea. Additionally, Alvarez does not claim the government failed to timely indict him, rather that the information and the indictment both count toward the STA's 70-day time limit.

**[8]** As noted, the parties dispute only the period from June 27, 2007, until July 18, 2007. We have determined that 20 days during this period must be counted as non-excludable time, and when they are, the STA clock ran for 72 days before Alvarez's trial on January 20, 2009. Therefore, the indictment must be dismissed.

## WAIVER

The government next argues that Alvarez waived his right to raise an STA violation because his motion was oral and untimely. Defense counsel made the oral motion at a hearing on motions in limine the day before trial began, and the district court refused to entertain it as untimely.

**[9]** Under the STA, "[f]ailure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal under this section." 18 U.S.C. § 3162(a)(2). Although the STA does not define what "prior to trial" means, the parties agree that the motion was made prior to trial in this case, as it was brought even before jury selection took place. Thus, the government concedes that the motion was not untimely under this provision, but asks us to read into the STA an implicit additional untimeliness exception to the mandatory dismissal rule where the defendant fails to raise his STA claim until the eve of trial.

**[10]** To support its position, the government points to *United States v. Shetty*, 130 F.3d 1324 (9th Cir. 1997), in which we noted that "we will not sanction the use of the

Speedy Trial Act as a 'sandbag,' held for 540 days and then thrown at the district court ten days before trial." *Id.* at 1331. In that case, however, we ultimately rejected the STA claim because the district court's findings of excludable time were not clearly erroneous. Indeed, although we expressed our dissatisfaction with defense counsel's tactics, we observed that "Shetty's motion technically came prior to trial and preserved his right to raise this issue." *Id. Shetty* thus recognizes the clear statutory deadline for motions to dismiss under the STA, and we are unwilling to find a motion untimely when it is made "prior to trial."

Our interpretation is bolstered by the mandatory nature of the STA. Under the STA, "[i]f a defendant is not brought to trial within the time limit required . . . , the information or indictment *shall be* dismissed on motion of the defendant." 18 U.S.C. § 3162(a)(2) (emphasis added); *see also United States v. Tertrou*, 742 F.2d 538, 540 (9th Cir. 1984) ("Congress has mandated strict time requirements in the Speedy Trial Act. In the event they are not met, the courts have no discretion but to dismiss."). Accordingly, we've previously held that "a defendant cannot 'waive' time under the Speedy Trial Act." *Ramirez-Cortez*, 213 F.3d at 1156; *see also Zedner v. United States*, 547 U.S. 489, 500-01 (2006). Permitting a defendant to waive his right to dismissal by not filing the motion in a timely manner, even when made before trial, would seriously undermine our rule that the defendant cannot prospectively consent to an STA violation. Thus, so long as a defendant brings his motion to dismiss under the STA prior to trial, it is timely under the STA, and the district court must dismiss if a violation is found. *Contra United States v. Spagnuolo*, 469 F.3d 39, 45 (1st Cir. 2006).

**[11]** The district court also refused to consider Alvarez's motion because it was made orally. Although the STA requires the indictment to be dismissed for an STA violation only "on motion of the defendant," the statute does not specify whether this motion must be in writing. 18 U.S.C.

§ 3162(a)(2). Our circuit has not yet considered the issue. The Tenth Circuit, however, has found that a defendant's informal "statements to the district court prior to trial, in which he claimed a violation of the STA, satisfy the motion requirements of 18 U.S.C. § 3162(a)(2)," even though the defendant did not present his claim "in the form of a formal, written motion." *United States v. Arnold*, 113 F.3d 1146, 1149 (10th Cir. 1997). *But see Spagnuolo*, 469 F.3d at 45 ("[The defendant's] oral request to tack on an additional speedy indictment claim was not a motion within . . . the meaning of the statute . . . .").

We agree that a court should entertain a motion to dismiss under the STA so long as the defendant "br[ings] to the trial court's attention his belief that the STA ha[s] been violated." *Arnold*, 113 F.3d at 1149. This rule is consistent with our circuit's permissive construction of other statutes that require the defendant to "file a motion." *See*, *e.g.*, *United States v. Irvin*, 450 F.2d 968, 970 (9th Cir. 1971) (interpreting 18 U.S.C. § 4244). And requiring the district court to consider such motions, even when made informally and at the eleventh hour, accords with Congress's clear intent to place a fair share of responsibility for ensuring that cases are tried in a timely fashion on the district court and government counsel. *See Medina*, 524 F.3d at 982. Moreover, this interpretation of the STA is reasonable given that counsel's failure to make a meritorious STA motion may constitute ineffective assistance, in which case any resulting conviction would eventually be vacated anyway—after the parties and the court have wasted considerable resources at trial. *See United States v. Palomba*, 31 F.3d 1456, 1466 (9th Cir. 1994) (vacating convictions for ineffective assistance of counsel for failure to make an STA motion). We therefore conclude that the district court should consider such motions when they are not frivolous, defense counsel is proceeding in good faith, and the facts supporting the motions are set forth. In this case, there is no evidence, other than the timing of the motion itself, that defense counsel acted in bad faith. And although Alvarez did not provide the

reasons in support of his motion, he was not given the opportunity to do so by the district court. Accordingly, we find that the district court should have entertained Alvarez's oral motion to dismiss under the STA.

**[12]** Nevertheless, we believe that defense counsel should ordinarily make such motions in writing and should avoid waiting until the eve of trial when possible. We recognize that by failing to abide by the trial court's orders, defense counsel can circumvent scheduling deadlines and frustrate the judge's ability to manage the case in an orderly manner. In this case, for example, the district court set and continued several deadlines for the parties to present and oppose motions. Alvarez's motion to dismiss for a violation of the STA became ripe on September 9, 2007, and he had ample time to prepare and present a written motion to dismiss on STA grounds within the briefing schedule set out by the district court. We in no way mean to undermine the broad discretion of the trial court to set procedures and deadlines for pretrial motions. *See Christian v. Mattel, Inc.*, 286 F.3d 1118, 1129 (9th Cir. 2002) ("The district court has considerable latitude in managing the parties' motion practice and enforcing local rules that place parameters on briefing."); *United States v. Doe*, 627 F.2d 181, 183-84 (9th Cir. 1980) ("The trial court's power to administer the court calendar and to control the time and conduct of the trial is broad."); *see also* Fed. R. Crim. P. 47 (district court has discretion over form and timing of motions). We merely recognize that the STA is a strict and unforgiving statute that creates only one possible waiver situation: where the defendant raises the STA issue for the first time after trial begins. *See*, *e.g.*, *United States v. Berberian*, 851 F.2d 236, 239 (9th Cir. 1988). Of course, in any case where an attorney acts in bad faith or fails to substantially comply with the court's scheduling orders and briefing deadlines, the district court is free to impose sanctions after notice and a hearing, whether the motion is ultimately granted or denied. *See* Fed. R. Crim. P. 57.

### INVITED ERROR

**[13]** The government next contends that we should not review Alvarez's STA claim because Alvarez "invited" the STA violation by contributing to the delay when (1) he more than once changed his mind about pleading guilty; (2) he requested and received new counsel, who indicated that she would need some time to prepare; (3) his counsel did not object to the erroneous maximum trial date when announced by the court; and (4) he waited until the eve of trial to assert a speedy trial violation. This is not invited error. After *United States v. Perez*, 116 F.3d 840 (9th Cir. 1997) (en banc), we must "limit[ ] our application of the invited error doctrine to those rights deemed waived." *Id.* at 842. But the Supreme Court has held that a defendant cannot waive an STA violation, so invited error is not possible in this context. *Zedner*, 547 U.S. at 500-01. Although the government argues we should not "reward" the defendant with dismissal of charges, it cannot show that Alvarez invited the error.

**[14]** To the extent we could construe the government's invited error argument as an estoppel argument, we would also reject it. Judicial estoppel "prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Id.* at 504. But Alvarez never represented that the period from June 27 to July 18 was excludable, nor did he argue to the court that July 18 was the proper start date, so he is not now judicially estopped from taking a contrary position. *See id.* at 505 (holding that "petitioner's (mistaken) agreement" with the trial court's erroneous STA determination did not "provide a ground for estoppel").

### DISMISSAL WITH OR WITHOUT PREJUDICE

**[15]** When an STA violation occurs and the defendant is not brought to trial within the applicable 70-day time limit, the indictment must be dismissed. 18 U.S.C. § 3162(a)(2).

Congress directs the court to consider the following in determining whether the dismissal should be with or without prejudice: "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." *Id.* In addition, the court should consider prejudice to the defendant from the delay. *United States v. Taylor, 487 U.S. 326, 333-34 (1988).*

**[16]** Normally, when an STA violation is found on appeal, the matter is remanded to the trial judge to hold a hearing and consider the issues identified by Congress. *See Taylor*, 487 U.S. at 335 ("[T]he decision to dismiss with or without prejudice [is] left to the guided discretion of the district court, and . . . neither remedy [is] given priority."). In rare situations, when the facts are clear, the appellate court may make the decision itself. *See*, *e.g.*, *United States v. Clymer, 25 F.3d 824, 831 (9th Cir. 1994). This is such a case.*

**[17]** The first factor Congress has instructed us to consider is the seriousness of Alvarez's offense. In determining the seriousness of reentry after deportation cases, Congress looks to whether the defendant had prior felonies before he was originally deported. Under the sentencing scheme, the most serious sentences are reserved for those who had prior aggravated felonies before they were deported. Alvarez falls in the most serious class. Alvarez had two prior aggravated felonies (assault with intent to commit rape and possession of cocaine with intent to distribute), and the court had the discretion to sentence Alvarez to up to 20 years. See *United States v. Pena-Carrillo*, 46 F.3d 879, 882 (9th Cir. 1995) (affirming dismissal without prejudice because illegal reentry after prior aggravated felony is "moderately serious"); *see also United States v. Lewis*, 611 F.3d 1172, 1180 (9th Cir. 2010) (affirming dismissal without prejudice because offenses carrying a maximum sentence of five years are " 'serious' within the context of the Speedy Trial Act"). We conclude that Alvarez's offense was serious.

**[18]** With respect to the second factor, we begin by examining "the sheer length of the period involved." *Clymer*, 25 F.3d at 831-32 (quoting *United States v. Stayton*, 791 F.2d 17, 21 (2d Cir. 1986)). In this case, Alvarez was brought to trial only 2 days after the 70 days mandated by the STA. The other "facts and circumstances" similarly do not suggest dismissal with prejudice is warranted. While Alvarez was continuously in custody from the time of his arrest and had served 675 days by the time he was sentenced, the bulk of the 675 days was served after the STA clock ran, and most of the continuances were granted at Alvarez's request or to his benefit. The 2-day delay is therefore properly characterized as "technical, rather than substantive." *Medina*, 524 F.3d at 987.

**[19]** The third factor also suggests dismissal without prejudice. In this case, we are not concerned about "the impact of a reprosecution on the administration of [the STA] and on the administration of justice." 18 U.S.C. § 3162(a)(2). Unlike in *Clymer*, where the STA violation resulted from a "basic misunderstanding of the appropriate use of the 'ends of justice' exclusion,"[3] here, the misunderstanding arose from mere computational error. Had the district court and the government been alerted to the STA problem, the court easily could have excluded time in the interest of justice to avoid violating the Act. *See* 18 U.S.C. § 3161(h)(7)(A)-(B). Further, there is no evidence, and Alvarez does not contend, that the government intentionally delayed his trial in order to harass him or otherwise acted in bad faith. *See Medina*, 524 F.3d at 987 (finding third factor counseled against dismissal with prejudice where "there was no evidence of bad faith on the part of the government").

**[20]** Finally, the defendant has not shown the delay would prejudice him if he is retried. *Cf.*, *e.g.*, *Clymer*, 25 F.3d at 832 (finding prejudice where defense witness disappeared during the delay). In short, there is no reason to dismiss the indict-

---

[3]*Clymer*, 25 F.3d at 832.

ment with prejudice. Because we dismiss the indictment, we need not address Alvarez's other claims.

The judgment of the district court is **VACATED** and this case is **REMANDED** to the district court to dismiss the indictment without prejudice.